IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GEORGE WILLIAM BAHR, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:12-CV-0065 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY
## PETITION FOR WRIT OF HABEAS CORPUS

Came for consideration the Petition for Writ of Habeas Corpus filed by petitioner

GEORGE WILLIAM BAHR challenging his May 1, 2007, conviction for possession of

methamphetamine with intent to deliver four grams or more but less than 200 grams while using

and exhibiting a deadly weapon out of the 47th Judicial District Court of Randall County, Texas,

and the resultant life sentence. *See State v. Bahr*, No. 18,125. For the reasons set forth below, it

is the opinion of the undersigned United States Magistrate Judge that the petition be DENIED.

I.
FACTS AND PROCEDURAL HISTORY

Petitioner George William Bahr was charged by indictment on September 20, 2006, in

Cause No. 18,125 with possession with intent to deliver methamphetamine in the amount of four

grams or more but less than 200 grams and with use and exhibition of a deadly weapon. The

indictment included an enhancement paragraph alleging a prior felony conviction for aggravated

robbery.

indictment included an enhancement paragraph alleging a prior felony conviction for aggravated robbery.

Based on the evidence presented at trial, it appears petitioner was arrested on June 1, 2006, when the Randall County Sheriff's office executed a search warrant for petitioner's home, office, and shop complex. Officers testified they found 27.45 grams of methamphetamine scattered around petitioner's residence and in his vehicle as well as marijuana, drug paraphernalia, large quantities of cash, two digital scales, and small plastic bags. The officers also found a loaded shotgun near where petitioner was sleeping, a loaded handgun in or under his desk, ammunition, and an improvised explosive device. The officers testified the amount of methamphetamine, combined with the presence of the scales and small plastic bags, indicated the drugs were likely for distribution rather than personal use. Bahr took the stand in his own defense and admitted to personally possessing six-plus grams of methamphetamine but denied possessing the rest of the methamphetamine and denied distributing or possessing it with intent to distribute. He claimed he was only a recreational user and blamed the distribution evidence on his brother, Curtis and his (defendant's) girlfriend, Barbara Roland. The court recessed shortly after cross examination of petitioner had started. Petitioner was not present for trial the next day; the trial continued without him and without completing the cross-examination of him. Trial counsel called petitioner's sister, Cindy Koons, who testified petitioner was merely an addict and not a dealer. The state was able to impeach this testimony by reference to recorded jail house conversations petitioner had with Koons in which petitioner made statements about drug use and which could also be interpreted as admitting to drug dealing, lack of remorse, and intent to continue using drugs in the future. The jury returned a verdict of guilty with a deadly weapon

finding. The state proved up petitioner's prior conviction, and the jury assessed a sentence of life in prison. Petitioner was sentenced on May 1, 2007, filed a motion for new trial on May 31, 2007, and had his certification of right to appeal signed on August 16, 2007. Petitioner appealed his conviction to the Seventh Court of Appeals of Texas. His Motion to Abate and Remand was granted, and the appellate court remanded the case to the trial court for a hearing on the motion for a new trial, which alleged ineffective assistance of counsel. A hearing was held on petitioner's motion for new trial on April 28, 2008. The judge made the following findings of fact and conclusions of law: (1) counsel was not ineffective for failing to call Curtis Bahr, and, if he was, petitioner did not suffer prejudice; (2) trial counsel was not ineffective for advising petitioner to admit to possessing methamphetamine because it is not ineffective assistance to advise a client to tell the truth, and, even if it were ineffective, defendant had not shown prejudice; and (3) while counsel was ineffective for making statements that might have been interpreted as advising petitioner to flee, such ineffectiveness was not prejudicial.

The court of appeals affirmed Bahr's conviction on August 10, 2009, finding Bahr's trial counsel was not ineffective. *Bahr v. State*, 295 S.W.3d 701 (Tex. App.—Amarillo 2009, pet. ref'd). Bahr filed a petition for discretionary review with the Texas Court of Criminal Appeals, but the petition was refused on January 13, 2010. On January 23, 2011, Bahr filed a state application for a writ of habeas corpus. The Texas Court of Criminal Appeals denied the application without written order on November 23, 2011. Petitioner filed this petition on February 8, 2012.

## II.
## PETITIONER'S CLAIMS

Petitioner alleges his conviction and sentence violate his rights under the United States

Constitution because:

    1.      Petitioner received ineffective assistance of counsel when trial counsel:

            A.      Advised petitioner to admit to possession of a small amount of methamphetamine;

            B.      Called petitioner's sister to testify, which allowed the state to ask questions about petitioner's jail house conversations with his sister;

            C.      Failed to call a witness who would have testified the methamphetamine did not belong to petitioner;

            D.      Advised petitioner to flee the jurisdiction during trial;

            E.      Failed to file a motion to suppress the evidence found pursuant to a search warrant as stale;

            F.      Caused the admission of petitioner's criminal record; and

            G.      Failed to object to harmful extraneous offenses;

    2.      The evidence supporting petitioner's conviction and deadly weapon finding was insufficient; and

    3.      The prosecution made improper argument during the punishment phase of the trial by referencing matters not in evidence violating petitioner's Due Process rights.

III.<br>AEDPA

This federal petition was filed after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Consequently, the provisions of the AEDPA apply to this case.

Under 28 U.S.C. § 2254(d), a federal writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the prior adjudication:

    (1)    resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the

Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision adjudicated on the merits in state court and based on a factual

determination will not be overturned unless it is objectively unreasonable in light of the evidence

presented in the state court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct.

1029, 1041, 154 L. Ed. 2d 931 (2003).  Section 2254(e)(1) provides that a determination of a

factual issue made by a state court shall be presumed to be correct.  The petitioner has the burden

to rebut this presumption of correctness by clear and convincing evidence.  *Hill v. Johnson*, 210

F.3d 481, 485 (5th Cir. 2000).  When the Texas Court of Criminal Appeals denies relief in a state

habeas corpus application, it is an adjudication on the merits, which is entitled to the

presumption.  *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ

jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular

claim."); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state

writ jurisprudence).

IV.
## EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

By his first ground, petitioner claims his trial counsel was ineffective.  The proper

standard for judging a claim of ineffectiveness is enunciated in *Strickland v. Washington*, 466

U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).  Under the two-pronged *Strickland*

standard, a petitioner must show defense counsel's performance was both deficient and

prejudicial.  *Id.* at 687, 104 S.Ct. at 2064.  If the attorney made errors so serious the attorney was

not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution, the performance was deficient. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at 690-91, 104 S. Ct. at 2066. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S.__, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S.___, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

A petitioner must also show counsel's deficient performance prejudiced the defense. Specifically, to prove prejudice a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir. 1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

When a state prisoner asks a federal court to set aside a conviction or sentence due to

ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* ___ U.S.___, 134 S.Ct. 10, 187 L. Ed. 2d 348 (2013). The absence of evidence cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" and cannot establish that the performance was deficient. *Id.* Petitioner Bahr's ineffective assistance of counsel claims were adjudicated on the merits in a state court proceeding, and the denial of relief was based on a factual determination that will not be overturned unless it was objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 1029 (2003). A state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Burt*, 134 S. Ct. at 15. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed correct, and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill v. Johnson*, 210 F.3d at 485. The Texas Court of Criminal Appeals denied relief. That decision was an adjudication on the merits, and is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d at 472; *Singleton*, 178 F.3d at 384 (recognizing this Texas state writ jurisprudence).

### A. Advising Petitioner to Admit Possession of Methamphetamine

Petitioner's complaint in his first subpart presents two distinct issues: (1) whether trial counsel was ineffective because the amount of methamphetamine he had petitioner admit to possessing did not establish petitioner had committed a crime that was a lesser included offense

and (2) trial counsel was ineffective for advising petitioner to commit perjury. This claim fails because it has not been established that counsel "had" petitioner admit to anything, nor has it been shown that petitioner's trial testimony was false.

Petitioner testified during guilt/innocence and admitted to possessing 6.25 grams of methamphetamine but denied possessing the remaining 20.95 grams alleged in the indictment. Texas Health and Safety Code § 481.112(c) makes possessing *with intent to distribute* between four and 200 grams of methamphetamine a first degree felony, while § 481.112(b) makes possessing between one and four grams with intent to distribute a second degree felony. Petitioner seems to contend trial counsel's strategy was to have petitioner admit to possessing a portion of methamphetamine in the one to four gram range, which would have led to petitioner being punished for a second degree felony under § 481.112 (b). If this contention were true, it would have been questionable advice to permit petitioner to admit to 6.25 grams without admonishing him of the law, because possessing 6.25 grams of methamphetamine with intent to deliver would still be punishable as a first degree felony. But this was not trial counsel's strategy. Instead, trial counsel intended to establish that petitioner was only a user rather than a distributor. Trial counsel's strategy was to have petitioner punished under § 481.115, a lesser included offense, which makes possessing, without intent to distribute, between four and 200 grams a second degree felony. *See Campbell v. State*, 149 S.W.3d 149, 153 (Tex. Crim. App. 2004) ("Texas courts have held that simple possession is a lesser-included offense of possession with intent to distribute"). Trial counsel was not ineffective for employing this strategy, which, if successful, would have lowered petitioner's potential punishment range.

Second, regarding trial counsel advising petitioner to commit perjury, Bahr offers no

proof showing trial counsel gave him any such advice. Instead, contrary to his sworn testimony at trial, petitioner now claims none of the methamphetamine belonged to him, and that by advising petitioner to admit to possessing any amount of methamphetamine, counsel was advising petitioner to commit perjury. The Court has found no evidence of trial counsel advising petitioner to admit to possessing an amount of methamphetamine that trial counsel knew to be false. As discussed herein, trial counsel admonished petitioner to admit to only possessing any amount he actually possessed. The only available evidence is trial counsel's testimony from the hearing on the motion for new trial and a document signed by petitioner entitled "Witness' Statement Regarding Trial Testimony." During the hearing on the motion for new trial, counsel testified he did not know how much of the methamphetamine petitioner could "own up to" because he had no personal knowledge. While he said there was "some debate" about how much petitioner could own up to, he left the ultimate decision to Bahr. Further, counsel admonished petitioner to tell the truth, and had petitioner sign a document swearing petitioner would only testify to information he believed to be truthful, and admitted that trial counsel had not instructed petitioner to offer false testimony. State Habeas Records, Vol. II, pg. 299 (Witness' Statement Regarding Trial Testimony). Petitioner's first subpart is without merit.

### B. Calling a Witness Who Opened the Door to Taped Jailhouse Conversations

In his second subpart, petitioner claims trial counsel provided ineffective assistance by calling a witness who gave prejudicial testimony. Trial counsel called Cindy Koons, petitioner's sister, to corroborate petitioner's defensive theory that the majority of the methamphetamine belonged to petitioner's brother, Curtis, who was the alleged "bad player." Koons testified that Curtis, along with the rest of her family, were drug addicts. She discussed how Curtis used many

types of narcotics and would do just about anything to support his drug habit, including theft and drug dealing.  She also testified that, while petitioner was a drug user, he had never dealt drugs. On cross examination the state was able to ask Koons about telephone conversations she had with petitioner while he was in jail in which petitioner made statements which could be viewed as admitting not only to drug use, but also to drug dealing.[1]

It is not ineffective to cause the admission of this sort of "double edged" evidence so long as the choice to introduce it was based on strategy rather than lack of investigation.  *Johnson v. Cockrell*, 306 F.2d 249, 253 (5th Cir. 2002).  The state court found petitioner had strategic reasons for introducing the evidence, namely that Koons's testimony was "supportive of the overall strategic plan of the defense and was supported by the testimony of appellant's mother, Marlene Bahr." *Bahr v. State*, 295 S.W.3d 701, 714 (Tex. App.—Amarillo 2010, pet. ref'd).  In order for this court to grant federal relief, counsel's strategy must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___ 131 S.Ct. 770, 786-87 (2011).  Where balancing the benefit of the evidence versus the harm presents a "difficult question," the state court decision cannot be said to be beyond the scope of fairminded disagreement. *See Charles v. Stephens*, 736 F.3d 380, 394 (5th Cir. 2013).

This case is not, as petitioner attempts to make it out to be, a situation in which calling the witness provided no benefit to the defense.  Petitioner contends "the State successfully blocked her testimony on personal knowledge grounds."  This is inaccurate.  The state blocked

---

[1] Cindy Koons's testimony was somewhat disjointed.  While it appears at one point she may have given testimony that defendant admitted to dealing, it is open to interpretation whether she ever unequivocally said petitioner admitted to drug dealing.  4 RR 28-31.

most of Koons's testimony about Barbara Roland, but she was still able to testify, based on her knowledge of family history and knowledge acquired from her numerous visits to petitioner's residence, about Curtis's drug use, and about Curtis's drug dealing, theft, and general bad reputation. Additionally, the negative testimony was not all that bad because, as stated by the intermediate court of appeals, "[E]ach of the areas of cross-examination that appellant claims were harmful was either placed before the jury at other times in the trial or could have bene proven up at other times through other witnesses at the state's disposal." *Bahr*, 295 S.W.3d at 714.

Viewing Ms. Koons's testimony after the fact, it may be that the evidence educed by the state was more harmful than the evidence educed by the defense was helpful. Trial counsel did not have the benefit of hindsight, and this Court does not find that the state court was objectively unreasonable in determining trial counsel's decision to offer the evidence was based on reasonable trial strategy. Petitioner's claim in this subpart is without merit.

### C. Failure to Call Beneficial Witness

In his third subpart, petitioner claims counsel was ineffective for failing to call petitioner's brother, Curtis Bahr, as a witness. Petitioner claims Curtis would have provided evidence that Barbara Roland possessed the drugs, was seen packaging the drugs the night before the search, and that petitioner was not present at his house until 30 minutes before the raid. Trial counsel did not interview Curtis because he claimed it was unnecessary since his trial strategy was to place the blame for the drugs on Curtis, and because other family members who counsel had interviewed pointed to Curtis as being the "bad player."

Respondent contends counsel was not ineffective because the testimony Curtis Bahr

would have given would have "cut against his trial strategy." While this might explain why counsel decided not to call Curtis as a witness, it does not, by itself, necessarily excuse counsel's failure to interview Curtis at all. For counsel to be effective, the decision not to interview Curtis must have been objectively reasonable. *Wiggins v. Smith*, 539 U.S. 510, 525, 123 S. Ct. 2527, 2537, 156 L. Ed. 2d 471 (2003). Counsel is reasonable in deciding not to pursue certain avenues of investigation when such investigation would be counterproductive or fruitless. *See id.* But in judging whether counsel was unreasonable in determining further investigation would be counterproductive or fruitless, courts must make every effort to avoid the "distorting effects of hindsight." *See Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984).

Avoiding the use of hindsight and judging the decision to not interview Curtis using only the facts known to counsel at the time of the investigation and trial, counsel has not been shown to have been unreasonable for failing to interview Curtis. It was not, as petitioner claims, a snap decision to not interview Curtis. Counsel thoroughly investigated his defensive strategy of blaming Curtis, and, from his interviews with other witnesses, family members, and petitioner, trial counsel reasonably determined Curtis was the "bad player" in the family. Also, counsel discussed this strategy with petitioner thoroughly and petitioner agreed with it. It would very likely have been counterproductive to interview Curtis, who would have been unlikely to admit he was responsible and/or culpable. While Curtis Bahr, after the trial was over and after petitioner had been convicted, did testify at the motion for new trial that Roland was responsible, his testimony did not include any acceptance of responsibility. No other witnesses corroborated this testimony or gave any indication it was a reasonable avenue to pursue. In fact, petitioner

Bahr's testimony was that Curtis Bahr was a heavy user while Barbara Roland was a regular user. Further, petitioner agreed to the strategy of blaming both Curtis and Roland. The state appellate court specifically found that the strategic and tactical decisions of trial counsel regarding Curtis Bahr did not fall below the objective standard of reasonableness. *Bahr*, 295 S.W.3d at 712-13. The state court was not unreasonable in discounting this testimony and finding trial counsel was not ineffective for deciding not to interview Curtis Bahr.

If counsel were ineffective for failing to interview Curtis Bahr and call him as a witness, petitioner has not shown he suffered prejudice. Petitioner was still able to elicit testimony placing the blame for the drug possession on Roland from other sources. If Curtis Bahr would have testified in the same manner as he did in the motion for new trial it would have run counter to the narrative created from the testimony of the other witnesses, that Curtis was the bad player; would do anything to gain access to drugs, including drug dealing; and was responsible for the drugs. Given the amount of testimony offered to prove Curtis was a drug dealer, his testimony would be unlikely to be deemed reliable by a jury. Petitioner's trial counsel was not ineffective in this instance, and even if he were, petitioner has failed to show prejudice.

### D. Advising Bahr to Flee

Petitioner claims trial counsel was ineffective for advising him to flee the jurisdiction during a recess in the trial. At the hearing on the motion for new trial, petitioner's trial counsel admitted he had told Bahr that, if he were his drinking buddy or brother, he would probably tell Bahr to get out of town. He also testified he told Bahr, as his lawyer, he was required to tell him he must appear at trial. The trial court found that counsel was ineffective but petitioner did not suffer prejudice. The appellate court agreed that petitioner was not prejudiced, but also found

trial counsel was not ineffective. *Bahr v. State*, 295 S.W.3d 701, 710-11 (Tex. App.—Amarillo 2009, pet. ref'd). As that court stated, "the statements were made at a time when appellant wanted someone to tell him to flee." *Id.* at 711. This is evidenced by petitioner's continued insistence that trial counsel address his question regarding flight. While trial counsel did eventually address petitioner's concern, he did so in a way that made clear his legal advice was for petitioner to return to court the next day. The state courts held that because Bahr fled after giving favorable testimony and before most of that testimony could be challenged on cross examination, fleeing was not harmful.

To obtain habeas relief, petitioner must show more than the possibility of prejudice, he must show the state court was *objectively unreasonable* in deciding petitioner was not prejudiced. Further, as respondent points out in his brief, if the evidence adduced at trial points so overwhelmingly to petitioner's guilt that even the most competent attorney would not be able to obtain an acquittal, a possible error cannot be considered prejudicial. *Wilkerson v. Whitley*, 16 F.3d 64, 68 (5th Cir. 1994).

Considering all of the other evidence against petitioner, this Court does not find the state court was objectively unreasonable in determining Bahr was not prejudiced. The jury heard evidence of 27.45 grams of methamphetamine on property owned by petitioner; a desk which contained methamphetamine, a pistol, and petitioner's driver's license; various "tools of the trade" of a drug distributor; and more methamphetamine inside petitioner's truck. Likewise, as the state appellate court described, petitioner *benefitted* from having fled: the bulk of his testimony, including much that might be deemed favorable, was not subjected to cross examination. There is no basis for this Court to find the state court was objectively unreasonable

in determining petitioner was not prejudiced.

Further, petitioner is seeking to obtain an advantage by his misconduct.  It was petitioner who made his own decision to flee the jurisdiction.  While trial counsel engaged in a conversations he should have avoided, and may have given advice that could be construed as advising—or at least condoning—flight, he certainly did not instruct petitioner to flee.  In fact, his statement was preceded and succeeded by statements that petitioner should not flee, that he must show up for trial, and that his failure to show up would be bad for him.  Petitioner made the conscious decision to flee knowing it was wrong.  Petitioner should not benefit from his wrongful conduct by being rewarded with a new trial.  Petitioner's fourth subpart is without merit.

### E.  Failure to Suppress Search Warrant

In his fifth subpart, petitioner claims trial counsel was ineffective for failing to request a suppression hearing.  According to petitioner, the search warrant affidavit contained stale information, which was over a year old.  Petitioner also alludes to a perceived falsehood in the affidavit.

Petitioner's staleness argument is meritless.  Petitioner states, "One of the statements in the affidavit supporting the search warrant was that [affiant's confidential informant] had recently seen a shotgun in petitioner's possession . . . In Truth, this was the most recent information reflected in the affidavit."  The affidavit, however, actually states:

> The affiant was contacted by a confidential informant who advised the affiant that said confidential informant was inside the said suspected place within forty eight hours of today's date, 05-30-2006, and saw the suspected party in possession of a usable amount of methamphetamine in the form of an off white crystal.

The confidential informant's information related to petitioner being in possession of controlled

substances, was not over a year old, was not stale, was very recent, and was sufficient to support

a finding of probable cause.

The part of the affidavit petitioner focuses on involves what appears to have been a

different confidential informant and related to the "no knock" portion of the affidavit.  It reads,

"Affiant also received information *from another narcotics agent that his confidential informant*

has recently seen a shotgun in suspects possession in the office building described in the

warrant." (Emphasis added).  This portion of the affidavit was not essential to the finding of

probable cause for the search warrant, and, even if this information were shown to be false, such

would not support suppression.  *See Hudson v. Michigan*, 547 U.S. 586, 594, 126 S.Ct. 2159,

2165, 165 L.Ed.2d 56 (2006) (holding a violation of the knock and announce rule does not

prevent the government from seeking or taking evidence described in a warrant).  A motion to

suppress in petitioner's case would have been meritless.  Trial counsel was not required to make

futile motions or objections.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Petitioner also claims his counsel was ineffective for failing to seek a *Franks* hearing.

*Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  Petitioner's claim that his attorney should

have requested a *Franks* hearing is meritless because petitioner has failed to identify any

deliberate misstatements or any reckless disregard for the truth of those statements as required by

*Franks*.  438 U.S. at 170, 57 L.Ed.2d at 2683.  Petitioner's only allegation is that the information

supplied by the confidential informant regarding the shotgun was false.  As discussed above, that

portion of the affidavit related only to "no knock entry", and not to probable cause.  Further,

petitioner has not alleged or offered any evidence of record showing the information was, in fact,

false and that the attesting officer knew the information was false.

Petitioner has not overcome the AEDPA deference afforded to the state court decision denying habeas relief.  Petitioner's fifth subpart is without merit.

### F.  Causing Admission of Petitioner's Past Offenses and Failing to Object to Extraneous Offense Evidence.

In his sixth and seventh subpart, petitioner claims his trial counsel was ineffective because he: (1) caused the admission of petitioner's past criminal record and (2) failed to object to harmful extraneous offense evidence.  Both of these claims involve the same issues of trial strategy, and they will be addressed together.

Petitioner Bahr and trial counsel had very few options.  Petitioner insists he was not guilty of possession *with intent to distribute*, but the evidence against him was compelling. While 27.45 grams of methamphetamine would not qualify as a large-scale operation, it was of sufficient volume to constitute evidence of intent to distribute, especially in light of the scales and baggies found during the search.  In addition, the premises belonged to and were under the control of petitioner.  Two loaded firearms were also found in the small office where petitioner Bahr was sleeping.

In light of this overwhelming evidence, trial counsel's strategy was to present petitioner as a mere drug user, rather than a dealer, and as someone who had committed bad acts in the past, but who had always accepted responsibility for those bad acts.  To fully effectuate this strategy, petitioner took the stand and admitted to possessing a relatively small portion of the methamphetamine for his personal use.  To show he had nothing to hide, petitioner's trial counsel did not object to testimony concerning petitioner's lifestyle, prior dealings with the law, and any extraneous offenses.  He chose to instead "strike while the iron's hot" and let the evidence in knowing he would be able to cross-examine the witness about the evidence and

called Bahr as a witness.  Bahr would testify that, while he had committed those other bad acts,

he had admitted to those acts and had fully accepted responsibility.  Trial counsel would then

argue Bahr was doing the same thing in this case in that he was admitting to the small amount of

methamphetamine he was actually responsible for, but was not admitting to what he had not

done, i.e. distribute.  This was a reasonable strategic basis for allowing this testimony and such

strategic decisions are not a proper basis for a constitutional claim of ineffective assistance.

*Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).

In addition, trial counsel discussed this strategy with Bahr and his family on multiple

occasions.  Counsel testified that petitioner understood the risks associated with such a strategy

and agreed with the strategy.

Further, counsel's strategy was not novel or unique.  The state court of appeals noted that

fact when it denied relief on this claim, stating:

> [W]e see a strategic decision made by trial counsel about a theory of defense that is
> not uncommonly used in the trial of drug offenses, blaming another for the act in
> question. And, as is often seen when this type of defense is used, the defendant
> usually must testify. In any case where the defendant is going to testify, the first thing
> trial counsel ordinarily does, to make his client more believable, is go through all of
> the bad history in the defendant's background. Therefore, we cannot say that the act
> of failing to object to the extraneous matters within the warrant affidavit was an act
> that fell below professional norms. Accordingly, appellant cannot meet the first prong
> of the *Strickland* test. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.

*Bahr*, 295 S.W.3d at 713.  That decision was not objectively unreasonable.  This subpart is

without merit.  Petitioner's first ground, alleging ineffective assistance, should be denied.

V.
## SUFFICIENCY OF THE EVIDENCE

In his second ground, petitioner claims he was convicted on less than sufficient evidence.

Petitioner believes the evidence was insufficient because some of the drugs were not in plain

view or were among the personal belongings of Barbara Roland. He believes the evidence supporting the "by use of a deadly weapon" finding was insufficient because both firearms discovered during the raid were out of the reach of petitioner.

For purposes of federal habeas corpus review, a state conviction need only satisfy the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To determine the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Id.* at 318–19, 99 S.Ct. at 2789. In making this determination, the reviewing court must resolve all credibility choices and conflicting inferences in favor of the fact finder. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999). It is the fact-finder's responsibility alone "to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. The reviewing court must determine if the evidence is constitutionally sufficient to support the conviction, i.e., whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir.1991).

It is the sole province of the jury as the finder of fact to assess the credibility of the witnesses and to choose among reasonable constructions of the evidence. *See United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999). A jury is not to be second-guessed by a reviewing court in its choice of which witnesses to believe. *See United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir.1995). On federal habeas review, "[a] federal court may not substitute its own judgment

regarding the credibility of witnesses for that of the state courts." *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985). Moreover, "[t]he habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact." *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993).

Petitioner argues there were no "affirmative links" sufficient to prove petitioner knowingly possessed the drugs. Some of the factors Texas courts consider when determining whether there are sufficient "affirmative links" are: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. Grant*, 202 S.W.3d 158, 162 n. 12 (Tex. Crim. App. 2006).The number of factors present are less important, and, instead, what matters is the "logical force or degree of the factors that affirmatively link the defendant to the contraband." *Id.*

As the court of appeals pointed out, a number of factors support a finding petitioner was in possession of the methamphetamine. The office/shop and house were owned by Bahr, and he conducted his business from that location. Petitioner was physically present in the office and was

sleeping near a desk where much of the contraband was found.  Many items belonging to petitioner were found in the desk, including a cable bill with his name on it, a checkbook in the name of his business, and petitioner's driver's license.  Also, 6.3 grams of methamphetamine were found in a truck at the scene, that was owned by petitioner.  All of the discovered methamphetamine was easily accessible to appellant other than the methamphetamine in Barbara Roland's purse, and, as the court of appeals points out, petitioner was not charged with possessing that methamphetamine.  Finally, petitioner admitted to possessing approximately 6.25 grams of methamphetamine at trial.

Bahr argues the presence of other people along with "most" of the drugs not being in plain view mitigates against the other factors that would be indicative of Bahr possessing the drugs.  He also argues the non-present factors (no furtive gestures, not fleeing the scene, no incriminating statements) should outweigh the factors that were present.  The weighing of the evidence, however, is the province of the jury.  As a constitutional matter, evidence of the factors identified above, construed in the light most favorable to the verdict, are sufficient to support the conviction.  Petitioner has not shown the evidence was insufficient to support the finding that petitioner possessed drugs, with intent to deliver.

The evidence is also sufficient regarding the firearms.  Bahr contends in his petition that the weapons were ten to fifteen feet from him at the time of arrest and were too far out of his reach to be "used" in committing the crime.  At trial, however, Bahr admitted the shotgun was six to ten feet away, not fifteen.[2]

Texas courts have interpreted "use" to mean utilizing in order to achieve the commission

---

[2]Bahr initially said the shotgun was ten to fifteen feet away but corrected himself.

of a felony or in immediate flight from a committed felony, and "use" can mean even simple possession of a weapon. *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 1989). Possessing a firearm for the purpose of protecting or facilitating possession of contraband is considered "use" under Texas law. *Patterson v. State*, 169 S.W.2d 938, 942 (Tex. Crim. App. 1989). A state court's interpretation of state law is binding on a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *see also Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).

Whether or not petitioner used the firearms depends upon whether petitioner possessed the weapons to protect the methamphetamine found during the raid. This is a factual issue. This Court will defer to the decisions of the fact finder and must resolve all credibility choices and conflicting inferences in favor of the fact finder. *See Cyprian*, 197 F.3d at 740. A reasonable fact finder could infer from the evidence that the weapons were possessed by petitioner and were being used to protect the contraband. The weapons were found in the office in close proximity to where petitioner slept, and petitioner was sleeping there at the time of the raid. The jury could also infer from the location of the pistol, in a drawer of a desk that contained methamphetamine, that it was possessed for the purpose of protecting the drugs. The shotgun was also located in petitioner's office, the location of most of the methamphetamine. The jury could reasonably infer that petitioner possessed the weapons for the purpose of protecting the methamphetamine. The state court of appeals also thoroughly addressed this issue and denied relief. Petitioner's second ground is without merit.[3]

---

[3]For a more detailed and exhaustive explanation of the locations of the weapons, see the factual finding of the court of appeals, *Bahr v. State*, 295 S.W.3d 701, 709 (Tex. App.—Amarillo 2010, pet. ref'd).

VI
## PROSECUTORIAL MISCONDUCT

Petitioner claims the prosecution committed misconduct by referencing the taped jailhouse phone call between petitioner and his sister, which was not in evidence, during closing arguments.

When a habeas petitioner alleges a generic due process violation based on improper prosecutorial comments, a reviewing court must determine whether the remarks, "in the context of the entire trial, were sufficiently prejudicial to violate [the defendant's] due process rights." *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 94 S.Ct. 1868, 1869, 40 L.Ed.2d 431 (1974).  It is not enough that the remarks were undesirable or even universally condemned, *see Cobb v. Wainwright*, 609 F.2d 754, 755 (5th Cir. 1980); a petitioner may obtain relief only if "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 180, 106 S.Ct. 2464, 2471 (1986) (quoting *Donnelly*, 416 U.S. at 643, 94 S.Ct. at 1871).  "The prosecutor's remarks do not present a claim of constitutional significance unless they were so prejudicial that [the petitioner's] state court trial was rendered fundamentally unfair within the meaning of the Fourteenth Amendment." *Rushing v. Butler*, 868 F.2d 800, 807 (5th Cir. 1989).  A trial is fundamentally unfair only if the prosecutor's remarks evince either persistent or pronounced misconduct, or the evidence of guilt was so insubstantial that, in all probability, but for the remarks, the petitioner would not have been convicted. *Id.*  When attacked, prosecutorial comments are not considered in isolation, but are evaluated in the context of the entire trial as a whole, including the prosecutor's entire closing argument. *Id.*; *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).

Courts apply a two-step analysis to claims of prosecutorial misconduct. *United States v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir. 2004).  In the first step, the court must assess whether the prosecutor made an improper remark. *Id.* If the prosecutor made an improper remark, the court must then ask whether the defendant was prejudiced. *Id.* The prejudice step of the inquiry sets a high bar:

> Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected. A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone. The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict.

*United States v. Holmes*, 406 F.3d 337, 356 (5th Cir. 2005) (internal citations omitted).  The court generally looks to three factors is deciding whether any misconduct casts serious doubt on the verdict: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005).

Here, prosecutor's remarks were not persistent or pronounced.  Rather, they were few and intermittent.  The remarks were also not an example of pronounced misconduct and some of the remarks were arguably permissible.  During the cross examination of Cindy Koons, the prosecutor asked questions about the substance of a jailhouse conversation between Koons and petitioner.  To the extent Koons agreed that petitioner had made the statement at issue during these jailhouse conversations, the evidence of that statement was properly before the jury and was properly a subject for the prosecutor's closing argument.  Any reference by the prosecutor to aspects of the taped conversations that Koons did not admit to unequivocally or did not admit remembering were in all probability improper.  Those references, however, were not the

"pronounced misconduct" that would render a trial fundamentally unfair.

If the prosecutor did make improper remarks rising to the level of prosecutorial misconduct, petitioner has not shown he suffered prejudice. As discussed above, the tape recorded conversations were mentioned only briefly. The amount of the other evidence of guilt far outweighed the brief mention of the tape-recorded conversations. The alleged improper remarks did not cast serious doubt on the correctness of the jury's verdict. Petitioner's third point is without merit.

## V.
## RECOMMENDATION

Petitioner has failed to present any meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner GEORGE WILLIAM BAHR be DENIED on the merits.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___5th___ day of March 2015.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).